Luke W. Reese, OSB No. 076129
lreese@ghrlawyers.com
Elliot R. Field, OSB No. 175993
efield@ghrlawyers.com
GARRETT HEMANN ROBERTSON P.C.
P.O. Box 749
Salem, Oregon 97308-0749
Tel: (503) 581-1501
Fax: (503) 581-5891
    Of Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| NICOLE GILILLAND, an individual<br><br>                  Plaintiff,<br><br>vs.<br><br>SOUTHWESTERN OREGON COMMUNITY COLLEGE DISTRICT by and through its BOARD OF EDUCATION, an Oregon community college district and board; SOUTHWESTERN OREGON COMMUNITY COLLEGE, an Oregon community college,<br><br>                  Defendants. | No.   6:19-cv-00283-MK<br><br>**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW** |

## I.    INTRODUCTION

The jury does not have a legally sufficient evidentiary basis to find for Plaintiff on her Title IX or breach of contract claim. Furthermore, Plaintiff did not provide the jury with sufficient evidence to meet the narrow exception to award noneconomic damages on an Oregon state law breach of contract claim. Judgment as a matter of law is appropriate.

/ / / /

/ / / /

## II. MOTION

Pursuant to Federal Rule of Civil Procedure ("FRCP") 50, defendant, Southwestern Oregon Community College ("SWOCC"), respectfully moves for judgment as a matter of law on all of Plaintiff's claims against it, in particular her First Claim for Relief under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), her Second Claim for Relief for breach of contract, and also moves for judgment as a matter of law on Plaintiff's claim for noneconomic damages for breach of contract.

## III. LEGAL STANDARD

Once a party has been fully heard on an issue during a jury trial, a motion for judgment as a matter of law may be made before the case is submitted to the jury. FRCP 50. Judgment as a matter of law "is appropriate when the evidence presented at trial permits only one reasonable conclusion" and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. *Id.*; *Santos v. Gates*, 287 F.3d 846, 851 (9th Cir. 2002).

## MOTION NUMBER 1

## IV. Judgment as a Matter of Law is Proper on Plaintiff's Title IX Claim

### A. SWOCC Did Not Have Actual Knowledge of Plaintiff's Characteristics that Formed the Basis for Her Gender Stereotype Claim

Plaintiff perceived, inferred, and projected many wrongful acts onto SWOCC, but did not present any evidence that SWOCC had actual knowledge of her former career as an adult film model and actress, which is essential to her Title IX discrimination or harassment claim. The requirements of Title IX amount "essentially to a contract between the Government and the recipient of [federal] funds." *Gebser v. Lago Vista Indep. Sch. Dist.* 524 U.S. 274, 286 (1998). In exchange for receiving federal funds, institutions must fulfill Title IX's two related objectives: (1) avoid the use of federal resources to support discriminatory practices; and (2) provide

individual citizens effective protection against those practices. *Cannon v. University of Chicago*, 441 U.S. 677, 704 (1979). An institution such as SWOCC cannot fulfill this contractual obligation unless it knows who needs protection from discrimination and/or harassment **on the basis of sex**. The United States Supreme Court has found that "Congress did not intend to allow recovery in damages where [Title IX] liability rests solely on principles of vicarious liability or constructive notice." *Gebser*, 524 U.S. at 288. Put more directly, "a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Id. at* 290.

Plaintiff did not introduce any evidence that SWOCC had actual knowledge of discrimination or harassment against her in violation of Title IX. SWOCC did not know about Plaintiff's former career as an adult film model and actress. Plaintiff's assumptions begin with a March 14, 2018 email Plaintiff sent to her SWOCC advisor Melissa Sperry ("Sperry") with concerns that a peer with whom she had confided personal information was aware of "things about my past that I'm not proud of back when I was a teenager" that could "embarrass me." (Exhibit 1). Plaintiff did not elaborate on these embarrassing things from her past.

Plaintiff now states that she meant this past she is unproud of to be her former career as an adult film model and actress, and perhaps supposed gender stereotypes surrounding such work. (Complaint, ¶¶ 14, 30, 31) But neither Plaintiff's March 14, 2018 email nor any of the dozens of subsequent emails, meetings, and conversations with SWOCC staff in the Spring of 2018 communicate any facts to support SWOCC's actual knowledge of Plaintiff's past work in the adult film industry, let alone Plaintiff experiencing discrimination and/or harassment because of stereotypes attached to such work. Plaintiff's own August 1, 2018 tort claim notice to

DEFENDANT'S MOTION FOR JML:
Gililland v. Southwestern Oregon Community College District, et al.

Page - 3

SWOCC does not even mention SWOCC's alleged discriminatory, harassing, or retaliatory treatment of Plaintiff on the basis of sex. (Exhibit 274). Nowhere in Plaintiff's tort claim notice do the words, "Title IX," "sex," "woman," "discrimination," "harassment," or "retaliation" even appear. *Id.* Plaintiff did not introduce any evidence that SWOCC had knowledge of the facts that form the basis for her gender stereotype Title IX claim.

Contrast this with the chorus of SWOCC staff who testified to a **lack of knowledge** about Plaintiff's past. In 2018, SWOCC witnesses attempted to shepherd Plaintiff through an often-tense grade dispute process, all the while being completely unaware of Plaintiff's former career as an adult film model and actress:

- SWOCC Clinical Nursing Instructor and Advisor Melissa Sperry had no knowledge of Plaintiff's work as an adult film model and actress until after Plaintiff filed her lawsuit in February 2019 (Testimony, June 29, 2022 11:32 a.m.);

- SWOCC Nursing Director Susan Walker had no knowledge of Plaintiff's work as an adult film model and actress during the entire time Plaintiff attended SWOCC (Testimony, June 29, 2022 4:15 p.m.);

- SWOCC Career, Technical and Workforce Education Dean Francisco Saldivar had no knowledge of Plaintiff's work as an adult film model and actress until October 15, 2018 (Testimony, June 30, 2022 2:12 p.m.; Exhibit 78);

- SWOCC Clinical and Lab Instructor Pam Wick had no knowledge of Plaintiff's previous professional work until sometime in 2021, years after Plaintiff left SWOCC (Testimony, July 1, 2022 2:22 p.m.)

Plaintiff testifies that she completed a "discrimination and harassment" complaint and returned it in-person to SWOCC Vice President of Student Services Tim Dailey's secretary. (Testimony, June 28, 2022, 10:04 a.m.). However, Plaintiff did not enter this supposed written complaint into evidence, did not keep a copy of it back in 2018, did not create an electronic version of it, did not send any contemporaneous confirmation communication to SWOCC of her presenting the complaint to SWOCC, and did not ever email the supposed written complaint to anyone.

Plaintiff did not present any evidence that SWOCC had actual knowledge of Plaintiff's history as an adult film actress and model, which is essential for SWOCC to form the alleged gender stereotypes about her and constitute an actionable Title IX claim. A reasonable jury does not have a legally sufficient evidentiary basis to find for Plaintiff on the requisite issue of actual knowledge. Plaintiff's Title IX claim must be dismissed.

### B. Plaintiff Cannot Establish that SWOCC Acted With Deliberate Indifference

Since Plaintiff did not establish a legally sufficient basis to show that SWOCC officials had actual knowledge of sex discrimination against her, it follows that she did not satisfy a second element of her Title IX claim—that SWOCC acted with deliberate indifference toward her. An entity subject to Title IX acts with deliberate indifference when their actions are "clearly unreasonable in light of the known circumstances." *Davis v. Monroe County Bd of Educ.*, 526 U.S. 629, 648 (1999). A plaintiff in a Title IX damages suit based on a teacher's behavior "must prove actual knowledge of misconduct . . . and must also prove that the officials having that knowledge decided not to act on it." *Delgado v. Stegall*, 367 F.3d 668, 672 (7th Cir. 2004). Because Plaintiff did not establish that SWOCC possessed actual knowledge of the alleged protected characteristic to form any discriminatory motive on the basis of sex against her, *see infra Section IV.A.*, she simply could not—and did not—present any evidence that SWOCC acted with deliberate indifference

DEFENDANT'S MOTION FOR JML:
Gililland v. Southwestern Oregon Community College District, et al.

Page - 5

toward her. This is fatal to Plaintiff's Title IX claim.

### C. Plaintiff Did Not Establish that SWOCC Engaged in Severe, Pervasive, and Objectively Offensive Misconduct In Violation of Title IX

Judgment as a matter of law is appropriate because Plaintiff did not introduce legally sufficient evidence that would lead any reasonable juror to find that SWOCC's conduct toward her was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational opportunities or benefits provided by the school. Title IX damages awards are properly reserved for instances where plaintiffs are subject to extreme treatment because of their sex, and which lead to their being deprived of educational opportunities. *See Ray v. Antioch Unified Sch. Dist.*, 107 F.Supp.2d 1165, 1171 (N.D. Cal. 2000) (involving allegations of repeated threats, insults, taunts, assaults, and batteries resulting in plaintiff suffering a concussion and hearing impairment); *see also Roe v. Gustine Unified Sch. Dist.*, 678 F.Supp.2d 1008, 1026 (E.D. Cal. 2009) (involving allegations of a student-athlete being pinned down and sexual assaulted with an air hose and called homosexual epithets).

Here, Plaintiff testifies that on one occasion, with a "very creepy smile," SWOCC instructor Melissa Sperry told her she was giving her a zero on an assignment "because it takes a classy woman to be a nurse and unclassy women shouldn't be nurses." (Testimony, June 27, 2022, 4:22 p.m.). Plaintiff also attributes miscommunications about assignments between herself and SWOCC as part of SWOCC's misconduct in this case. Exhibit 34. Finally, Plaintiff asserts that SWOCC targeted her specifically by giving her a "zero" on a pathophysiology case study and placing her on level 2 probation after it was discovered that she plagiarized an assignment, having copied and pasted directly from online sources. (Exhibit 5). None of these facts rise to the level of being severe, pervasive, and objectively offensive sufficient to lead any reasonable juror to find that they deprived Plaintiff of access to educational opportunities or benefits provided by the school. Plaintiff's Title IX claim should be dismissed.

DEFENDANT'S MOTION FOR JML:                                                                                    Page - 6
Gililland v. Southwestern Oregon Community College District, et al.

### D. Plaintiff's Academic Performance Did Not Meet Legitimate Expectations

To reach the jury on her Title IX claim, Plaintiff had to present evidence that she is a member of a protected class under Title IX, her academic performance met SWOCC's legitimate expectations, she was the subject of adverse action, and similarly situated students outside of her protected class were treated more favorably. *Hogan v. Ogden*, No. 06-5078, 2008 U.S. Dist. LEXIS 58359, 2008 WL 2954245, at *9 (E.D. Wash. Jul. 30, 2008). No reasonable juror would have a legally sufficient evidentiary basis to find that Plaintiff met SWOCC's legitimate expectations.

There is no dispute that Plaintiff committed plagiarism. Plaintiff committed an act prohibited by SWOCC's Policy Regarding Academic Dishonesty, which is contained in the Nursing Program Student Handbook. The policy provides, in pertinent part, "Students who plagiarize in any of their work at [SWOCC] are subject to student disciplinary action. This might include but not be limited to receiving a '0' on an assignment or test after careful investigation." (Exhibit 107, p. 28). Plaintiff "never denied" that she copied and pasted information off the internet" without citing it. (Testimony, June 28, 2022, 1:55 p.m.). In accordance with that published policy, plaintiff received a zero on her case study assignment and was placed on academic probation. (Exhibit 5).

Those facts, standing alone, preclude a jury from finding that Plaintiff's academic performance met her instructors' legitimate expectations. Plagiarism is an academic offense, a type of academic dishonesty that, if left unchecked, can have the effect of unfairly promoting or enhancing one's academic standing. Even if Plaintiff's other assignments had all been completed to her instructors' standards, the assignment in question—which is all that matters for purposes of the discipline imposed—clearly fell below the line. Judgment as a matter of law is appropriate

DEFENDANT'S MOTION FOR JML:  
Gililland v. Southwestern Oregon Community College District, et al.

Page - 7

on Plaintiff's Title IX claim because she did not establish that her academic performance met SWOCC's legitimate expectations.[1]

### E. Plaintiff Failed to Establish Similarly Situated Students Were Treated More Favorably

SWOCC handled plaintiff's misconduct consistent with college policy and "accepted academic norms when compared to its treatment of other students." *Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 228 n 14 (1985).  SWOCC has since uncovered that citation problems were not isolated to Plaintiff.  But this in no way means these students were "similarly situated" with Plaintiff for purposes of Title IX.  *See id.* (in a due process case, evidence that some students with more incompletes, lower grades, and less experience were permitted to retake examination was not enough to show those students were "similarly situated" with plaintiff who was denied a retake opportunity).

First, there is no indication that Plaintiff's instructors knew other students committed comparable acts of plagiarism when Plaintiff received her Student Deficiency Form on April 25, 2018. (Exhibit 5).  *See Jones v. Gerwens*, 874 F.2d 1534, 1542 (11th Cir. 1989) (in a Title VII case, comparator's "similar acts" are relevant only if decisionmaker was aware of them).  In fact, the genesis of Plaintiff's frustration seems largely connected to SWOCC staff not scrutinizing other student work when determining appropriate discipline for Plaintiff's undisputed plagiarism.  Second, it is not enough that plaintiff assert that SWOCC maintained a policy and practice of allowing plagiarism.  Plaintiff must present specific evidence from which a factfinder could

---

[1] Relatedly, and as discussed in more detail below, Plaintiff failed to present evidence from which a reasonable jury could find that SWOCC lacked a legitimate reason for assigning her a zero on her case study assignment and placing her on academic probation (or that the reason was pretextual).  It is not uncommon that "the adequate performance inquiry merges with the pretext inquiry," as both involve issues relating to the plaintiff's performance.  *Varlesi v. Wayne State Univ.*, 909 F. Supp. 2d 827, 857 (E.D. Mich. 2012) (so noting when evaluating Title IX claim brought by former graduate student).

DEFENDANT'S MOTION FOR JML:  
Gililland v. Southwestern Oregon Community College District, et al.

Page - 8

determine that one or more of her male peers—or female peers who conform to some specific set of gender stereotypes—committed a sufficiently "similar act" of plagiarism that was identified yet unpunished. *See Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980), *cert den*, 449 U.S. 879, 101 S. Ct. 227, 66 L. Ed. 2d 102 (1980) (*prima facie* case not established under Section 1981 where punishment resulted from dissimilar conduct rather than discriminatory intent); *Moore v. City of Charlotte*, 754 F.2d 1100, 1102 (4th Cir. 1985), *cert den*, 472 U.S. 1021, 105 S. Ct. 3489, 87 L. Ed. 2d 623 (1985) (plaintiff must demonstrate "dissimilar sanctions for similar offenses" in order to establish a *prima facie* case under Title VII). That is because in deciding whether and how to discipline plaintiff, SWOCC was permitted to consider not only the fact of the plagiarism, but also its context and severity, as well as plaintiff's response to the charge. *Ewing*, 474 U.S. at 228 n 14 (review board could consider not only statistical data but also "nature and seriousness of the individual deficiencies," and it could make a "subjective judgment" of student's prospects for success in the profession).

Plaintiff has not shown that any of her similarly situated male peers—or female peers who conform to some specific set of gender stereotypes—in the nursing program were treated differently during investigations and/or disciplinary proceedings related to plagiarism. Plaintiff's Title IX claim should be dismissed.

### F. A Reasonable Jury Could Not Find that SWOCC Discriminated Against Plaintiff Based on Gender Stereotypes

Plaintiff cannot survive judgment as a matter of law on her Title IX claim, which is based on gender stereotype discrimination. Title IX forbids discrimination on the basis of gender stereotypes. *Videckis v. Pepperdine Univ.*, 150 F.Supp. 3d 1151, 1160 (C.D. Cal. 2015). In Title IX and Title VII gender stereotype discrimination cases, courts on occasion apply a "simple test"

to determine whether the evidence shows treatment of a person would be different but for their gender: evaluate whether the plaintiff would experience the same deprived access to educational opportunities or benefits if they were the "opposite" gender. *E.g., Maxon v. Fuller Theol. Seminary*, 549 F.Supp.3d 1116, 1124 (C.D. Cal. 2020) (stating that it was undisputed that plaintiffs in same-sex marriages would not have been expelled had they been the opposite gender and married the same spouse); *see also Videckis*, 150 F.Sudd. 3d at 1161 (concluding that lesbians on the women's basketball team would not be subject to differential treatment had they been males dating the same females).

Here, Plaintiff would be treated precisely the same way with respect to her plagiarized assignment and point deduction were she either a male nursing student or even more granularly, a female nursing student who never had a career as an adult film model and actress. The court can determine this with certainty because Plaintiff has not introduced any evidence to show that SWOCC had any knowledge of Plaintiff's career as an adult film model and actress. To the contrary, there is evidence from multiple witnesses testifying to SWOCC's **lack of knowledge** of Plaintiff's career as an adult film model and actress, the fact that forms the basis for Plaintiff's Title IX gender stereotype claim:

- Melissa Sperry had no knowledge of Plaintiff's work as an adult film model and actress until after Plaintiff filed her lawsuit in February 2019 (Testimony, June 29, 2022 11:32 a.m.);

- Susan Walker had no knowledge of Plaintiff's work as an adult film model and actress during the entire time Plaintiff attended SWOCC (Testimony, June 29, 2022 4:15 p.m.);

- Francisco Saldivar had no knowledge of Plaintiff's work as an adult film model and actress until October 15, 2018 (Testimony, June 30, 2022 2:12 p.m.; Exhibit 78);
- Pam Wick had no knowledge of Plaintiff's professional work until sometime in 2021, years after Plaintiff left SWOCC (Testimony, July 1, 2022 2:22 p.m.)

It is inconceivable that SWOCC and its staff could have formed any gender stereotypes about Plaintiff when they were entirely unaware of the information attributable to Plaintiff to form such alleged stereotypes. Plaintiff's Title IX claim must be dismissed.

### G.  Plaintiff Cannot Rebut SWOCC's Nondiscriminatory Basis for the Discipline

Assuming that Plaintiff did furnish the jury with an evidentiary basis to find for her on her Title IX claim, which she did not, the burden shifts to SWOCC to articulate a legitimate, nondiscriminatory basis for its discipline of Plaintiff.  SWOCC has already met this burden. SWOCC instructor Robin Finney suspected that Plaintiff plagiarized an assignment. Finney brought the assignment to SWOCC instructor Melissa Sperry, who confirmed the plagiarism. (Testimony, June 29, 022, 10:14 a.m.)  Plaintiff did not, and does not, deny that she committed plagiarism. (Testimony, June 28, 2022, 1:55 p.m.)  There is "overwhelming evidence" of a nondiscriminatory justification for plaintiff's discipline. *See Bisong v. Univ. of Houston*, 493 F. Supp. 2d 896, 910 (S.D. Tex. 2007) (where it was undisputed that plaintiff had committed plagiarism and there was "overwhelming evidence" supporting the university's nondiscriminatory justification for plaintiff's expulsion, there was no genuine issue of fact for trial).

Plaintiff cannot rebut that evidence or demonstrate that it is merely pretext for unlawful discrimination.  Even assuming that Plaintiff qualifies as a member of a protected class based on her former career, she has failed to present any evidence that she was targeted for discipline on

that basis or on the basis of sex more generally. It is true that, with the benefit of hindsight, SWOCC now knows that other students—who may not have worked in the adult film industry—may also have submitted assignments that contained plagiarized content. But that does not, standing alone, indicate an unlawful bias against Plaintiff.

The record simply contains no evidence from which a reasonable juror could make the "logical leap" that Plaintiff was the victim of sex discrimination based solely on the facts that: (1) plaintiff committed plagiarism; (2) plaintiff was disciplined for said plagiarism consistent with college policy; and (3) in hindsight, other students may also have committed varying degrees of plagiarism without repercussions. *Kahan v. Slippery Rock Univ.*, 50 F. Supp. 3d 667, 689 (W.D. Pa. 2014), *aff'd,* 664 F. App'x 170 (3d Cir. 2016) (no evidence of reverse gender discrimination based on conclusory allegation that courses plaintiff planned to teach were assigned to a woman); *see Thompson v. Ohio State Univ.*, 639 F. App'x 333, 342 (6th Cir. 2016) (for purposes of equal-protection claim, plaintiff's evidence of statistical disparity in referrals to academic misconduct committee not enough to demonstrate that race played a factor in any *particular* referral). Indeed, there is no evidence that Plaintiff's instructors were even aware of her previous career in the adult film industry, much less that they targeted her on that basis. Plaintiff only points to a comment, which Sperry disputes, that "it takes a classy woman to be a nurse and unclassy women shouldn't be nurses." (Testimony, June 27, 2022, 4:22 p.m.) Plaintiff also gives great import to a March 14, 2018 email Plaintiff sent to Sperry where she reports "things about my past that I'm not proud of back when [she] was a teenager" that could "embarrass her." (Exhibit 1). Even if Plaintiff were, as she alleges, singled out for punishment, there is simply no evidence that her federal civil rights were violated in the process because any singling out could not be done for the gender stereotype purposes Plaintiff asserts were violated.

SWOCC presented sufficient evidence of its nondiscriminatory reason for disciplining Plaintiff. And Plaintiff cannot show that the reason is merely a pretext for discrimination. Plaintiff's Title IX claim should be dismissed.

### H.  Plaintiff's Employment History is Not a Protected Status

Title IX prohibits discrimination on the basis of "sex," which includes biological sex assigned at birth, gender identity, and sexual orientation.  Exec. Order No. 13988 (Jan. 21, 2021). Generally speaking, a status that is not specific to biological sex, gender identity, gender stereotypes, or sexual orientation—such as a plaintiff's employment history—is not protected for purposes of Title IX.  Plaintiff alleges SWOCC treated her differently on the basis of sex when it discriminated against her based on gender stereotypes arising from her former career as an adult film model and actress. Aside from SWOCC's lack of knowledge about Plaintiff's former career, Plaintiff's Title IX claim must also fail because plaintiff's employment history, work in the adult film and modeling industry, is not dependent on her biological sex, gender identity, sexual orientation, or any gender stereotypes, and thus it does not qualify as a protected class.

Accordingly, Plaintiff has not presented a legally sufficient evidentiary basis for a reasonably jury to find in her favor.  Plaintiff's Title IX claim should be dismissed to the extent it alleges discrimination, harassment, deliberate indifference, selective enforcement, or retaliation arising from her "former career as an adult film model and actress."

### MOTION NUMBER 2

### V.  SWOCC Is Entitled to Judgment as a Matter of Law on Plaintiff's Breach of Contract Claim

As this Court has recognized, "the student-college relationship, which involves the payment of tuition for educational services, is essentially contractual in nature." *Doe v. Univ. of*

*Oregon*, No. 6:17-CV-01103-AA, 2018 U.S. Dist. LEXIS 49431, *53-54, 2018 WL 1474531 (D. Or. Mar. 26, 2018). Assuming that this principle applies equally to public and private colleges, *see id.* at *54, SWOCC and plaintiff may have a contractual relationship "based on terms contained in publications" provided by the college to its students. *Dauven v. George Fox Univ.*, 2010 U.S. Dist. LEXIS 142066, *49, 2010 WL 6089077 (D. Or. Dec. 3, 2010).

Plaintiff appears to characterize SWOCC's discrimination and harassment policy as the contract that SWOCC unlawfully breached. If so, judgment as a matter of law is proper in this case because Plaintiff has not provided the jury with a legally sufficient evidentiary basis to find for her on a breach of contract claim for two main reasons: (1) the anti-discrimination policy as a standalone contract is unenforceable insofar as it is composed of pre-existing duties and thus lacks consideration; and (2) even if the contract were enforceable, Plaintiff has not established that SWOCC materially breached it.

### A. The Discrimination and Harassment Policy Is An Unenforceable Contract

Plaintiff's breach of contract claim against SWOCC fails as a matter of law. On its own, the antidiscrimination and harassment policy cannot operate as a legally enforceable contract between Plaintiff and SWOCC. To plead a claim for breach of contract, a plaintiff must allege: (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach. *Sanchez v. Seterus, Inc.*, 2017 U.S. Dist. LEXIS 91846 *9 (N.D. Cal. June 14, 2017). There can be no existing contract without consideration. *Chung v. Nationstar Mortg.*, 2013 U.S. Dist. LEXIS 201892 *10 (C.D. Cal October 29, 2013). Anti-discrimination policies, written equal opportunity policies committing to not discriminate are mere recitals of what is already required by law. These are pre-existing legal duties unsupported by consideration and cannot constitute an independent

basis for recovery in contract. *See Sample v. Aldi Inc.*, 1994 U.S. Dist. LEXIS 1518 *35 (N.D. Ill. February 8, 1994); *see also Nine v. Starr*, 8 Ore. 49 (1879) (holding that an exchange of promises for a service which the other is legally bound to perform lacks consideration to form a contract and cannot be enforced).

In exchange for Plaintiff's payment of tuition, SWOCC agreed to not commit the unlawful act of unreasonably interfering with Plaintiff's education or performance of duties, and to not create an intimidating, hostile or offensive environment based on Plaintiff's "race, color, religion, and ethnicity, national origin, sex, sexual orientation, marital status, disability, veteran status, gender identity or age." (Exhibit 106). These promises by SWOCC are pre-existing legal duties, are unsupported by consideration, and cannot constitute an independent basis for recovery in contract. Plaintiff's breach of contract claim should be dismissed.

**B. Plaintiff Did Not Establish a Legally Sufficient Evidentiary Basis to Find that SWOCC Materially Breached its Contract**

Plaintiff did not introduce evidence that SWOCC breached the discrimination and harassment policy, materially or otherwise. Plaintiff provided evidence she was being targeted and harassed, but did not introduce any evidence to show that during the Spring of 2018 she alleged she was being discriminated or harassed on the basis of her "race, color, religion, and ethnicity, national origin, sex, sexual orientation, marital status, disability veteran status, gender identity or age." Alleging harassment or discrimination generally, unconnected to a protected class is insufficient to initiate SWOCC's obligations under the discrimination and harassment policy. Plaintiff must have alleged facts to put SWOCC on notice that the discrimination and harassment policy were applicable. She did not present evidence to this effect. Plaintiff's breach of contract claim must be dismissed.

## MOTION NUMBER 3

VI. **Judgment as a Matter of Law Should Be Granted on Plaintiff's Claim for Noneconomic Damages Arising out of Breach of Contract**

Plaintiff did not present a legally sufficient evidentiary basis to support her uncommon claim for noneconomic damages arising from SWOCC's alleged breach of contract. Indeed, "noneconomic damages are generally not recoverable on a breach of contract claim." *Moser v. DKN IND.*, 191 Ore. App. 346, 349 (2004). To be awarded compensation for mental suffering arising from a contract breach, Plaintiff has to prove: (1) the breach was wanton or reckless; (2) the breach caused bodily harm; and (3) it was the wanton or reckless breach of a contract to render a performance of such a character that the defendant has reason to know when the contract was made that the breach would cause mental suffering for reasons other than mere pecuniary loss." *Farris v. United States Fidelity & Guaranty Co.*, 284 Ore. 453 (1978). A plaintiff who only establishes that they experienced mental distress due to a defendant's alleged breach cannot recover noneconomic damages in a breach of contract claim. *Humphers v. First Interstate Bank*, 68 Ore. App. 573, 585 (1984). Moreover, the mere occurrence of a physical harm around the time of a contract breach is insufficient. Rather, the injury "must be such as was presumably contemplated by the parties as likely to occur at the time [the contract] was made, if a breach resulted." *Coffey v. Northwestern Hospital Ass'n*, 96 Ore 100, 117 (1920). For instance, it is evident that at the time of forming a medical services contract, the parties contemplate that nonperformance would result in physical injuries. *Id.* The same cannot be said for a community college discrimination and harassment policy.

/ / / /

/ / / /

**A. SWOCC Did Not Act Wantonly or Recklessly**

Plaintiff did not introduce any evidence to demonstrate SWOCC breached the discrimination and harassment policy wantonly or recklessly. These particular adverbs are correctly reserved for extreme conduct that can also be characterized as wicked or malicious. *Johannsen v. Salem Hosp.*, 336 Ore 211, 217 (2003). Plaintiff did not introduce any evidence that SWOCC acted with any malice or reckless disregard for Plaintiff's circumstances. Plaintiff testifies on multiple occasions that despite her raising concerns, SWOCC's response was to do nothing. (Testimony, June 28, 2022, 9:39 a.m., 9:47 a.m., 10:14 a.m.)

To the contrary, multiple SWOCC witnesses testified that they each met with Plaintiff and responded to her concerns during the Spring of 2018 to help promote her success in the SWOCC nursing program:

- Liz Cooper testified how she, Susan Walker, and Melissa Sperry wanted to help Plaintiff become successful in the nursing program (Testimony, June 29, 2022, 2:18 p.m., 2:22 p.m., 2:26 p.m.)

- Susan Walker testified that the purpose of placing Plaintiff on probation was "to come up with a plan that will help them be successful." (Testimony, June 29, 2022, 4:21 p.m.)

The evidence demonstrates that SWOCC personnel including but not limited to Melissa Sperry, Susan Walker, Francisco Saldivar, Liz Cooper, Tim Dailey, Dr. Ali Mageehon, and Jeff Whitey all exerted efforts to promote Plaintiff's successful matriculation in the SWOCC nursing program. Plaintiff failed to demonstrate that SWOCC wantonly or recklessly breached the discrimination and harassment policy. She must not be permitted to pursue noneconomic damages claim for her breach of contract claim.

### B. SWOCC Did Not Breach the Discrimination and Harassment Policy

For the reasons described in SWOCC's Motion No. 2, Section V, *supra*, SWOCC did not breach any discrimination and harassment policy with Plaintiff.

### C. Plaintiff Did Not Provide Evidence that a Breach of the Discrimination and the Harassment Policy Caused Her Bodily Harm

Plaintiff did not introduce evidence to show it was SWOCC's breach of its discrimination and harassment policy that caused her suicide attempt—the only physical injury Plaintiff references. Contract law "may deny damages for psychic or emotional injury not within the contemplation of the contracting parties." *Humphers v. First Interstate Bank*, 298 Ore 706, 710 (1985). Plaintiff cites to SWOCC's discrimination and harassment policy as the contract breached by SWOCC. And Plaintiff describes her June 2018 suicide attempt. But Plaintiff did not introduce any evidence that SWOCC and Plaintiff contemplated Plaintiff's physical injuries generally, or suicide specifically, as an outcome of SWOCC breaching the discrimination and harassment policy. Plaintiff's claim for noneconomic damages arising out of her breach of contract claim should be dismissed.

## VII.   CONCLUSION

Plaintiff has not introduced sufficient evidence to support either a Title IX claim or a state law breach of contract claim. The evidence is that Plaintiff disputed SWOCC's response to awarding her a zero and placing her on academic probation after she was caught plagiarizing an assignment. Whether other students should, in hindsight, have been similarly punished remains an open question. But it is not a question that should go to the jury in this case. Plaintiff has offered no evidence to suggest that she was unlawfully discriminated against or harassed on the basis of sex or any other protected status, or that SWOCC's handling of her plagiarism is otherwise actionable in this court as a Title IX claim. In addition, Plaintiff's state-law claim for breach of contract fails as a

matter of law, and her pursuit of noneconomic damages arising out of her breach of contract claim is legally insufficient on the evidence. SWOCC is entitled to judgment as a matter of law on both of Plaintiff's claims.

DATED this 5th day of July, 2022.

GARRETT HEMANN ROBERTSON P.C

*s/ Luke W. Reese*
Luke W. Reese, OSB No. 076129
lreese@ghrlawyers.com
Elliot R. Field, OSB No. 175993
efield@ghrlawyers.com
Of Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served the foregoing **Defendant's Motion for Judgment as a Matter of Law** on the date indicated below,

[ ]   Via Email
[X]   Via Electronic Filing
[ ]   Via Facsimile Transmission
[ ]   Via Hand Delivery
[ ]   Via Overnight Delivery

to the following person(s) a true copy thereof, contained in a sealed envelope (if other than by facsimile transmission), addressed to said person(s) at their last known addresses indicated below:

>Brandon J. Mark
>Michael W. Young *Bar No. 12282*
>Parsons Behle & Latimer
>201 South Main Street Suite 1800
>Salt Lake City UT  84111
>*Phone:  (801) 532-1234*
>*Fax:  (801) 536-6111*
>*Email:* bmark@parsonsbehle.com
>       myoung@parsonsbehle.com
>       ecf@parsonsbehle.com
>   *Of Attorneys for Plaintiff*

DATED this 5th day of July, 2022.

GARRETT HEMANN ROBERTSON P.C

*s/ Luke W. Reese*
Luke W. Reese, OSB No. 076129
lreese@ghrlawyers.com
Elliot R. Field, OSB No. 175993
efield@ghrlawyers.com
Of Attorneys for Defendant