UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

NICOLE GILILLAND, an individual,

                Plaintiff,

    v.

SOUTHWESTERN OREGON
COMMUNITY COLLEGE DISTRICT, by
and through its BOARD OF EDUCATION,
an Oregon community college district and
board; and SOUTHWESTERN OREGON
COMMUNITY COLLEGE, an Oregon
community college,

                Defendants.

Case No. 6:19-cv-00283-MK

**OPINION AND ORDER**

**KASUBHAI,** United States Magistrate Judge:

        Plaintiff Nicole Gililland ("Plaintiff") brought this action against Defendants Southwestern Oregon Community College District, by and through its Board of Education, and Southwestern Oregon Community College (collectively, "Defendant" or "SWOCC") and

Page 1 — OPINION AND ORDER

asserted three claims against Defendant: (1) a Title IX claim; (2) a breach of contract claim; and (3) an intentional infliction of emotional distress ("IIED") claim. *See* Compl., ECF No. 1.[1] In December 2021, the Court denied Defendant's motion for summary judgment as to the Title IX claim and breach of contract claim but granted Defendant's motion as to the IIED claim. *See* December 3, 2021 Op. & Order, ECF No. 65 ("O&O"); *see also Gililland v. Sw. Or. Cmty. Coll. Dist.*, No. 6:19-cv-00283-MK, 2021 WL 5760848, at *12 (D. Or. Dec. 3, 2021).[2]

In late June and early July 2022, the Court held an eight-day trial. *See* Minutes, ECF Nos. 122–31. On July 6, 2022, Defendant moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a). *See* Def.'s Mot. JMOL, ECF No. 129. The Court denied Defendant's motion. *See* Order, ECF No. 130. The jury returned a verdict finding for Defendant on the Title IX claim and a verdict finding for Plaintiff on the breach of contract claim. *See* Jury Verdict, ECF No. 134. The jury awarded Plaintiff $735,417 in economic damages and $1,000,000 in noneconomic damages. *Id.* Defendant timely moved for renewed judgment as a matter of law under Fed. R. Civ. P. 50(b). *See* Def.'s Mot. JMOL, ECF No. 140.

Given the extensive briefing and jury trial, the Court and parties are well familiar with the factual and procedural history, contested issues of law, and evidentiary record in this case. As a result, the Court limits its discussion only to information necessary to resolve the pending matters before the Court, which consist of: Plaintiff's Bill of Costs (ECF No. 139); Defendant's Renewed Motion for Judgment as a Matter of Law (ECF No. 140); and Defendant's Motion for a Stay (ECF No. 141).

---

[1] Plaintiff withdrew her state law claims for negligent supervision and intentional interference with economic relations. *See* Pl.'s Resp. 35 n.9, ECF No. 41.

[2] All parties consented to jurisdiction by a U.S. Magistrate Judge. *See* ECF No. 13.

Page 2 — OPINION AND ORDER

**DISCUSSION**

**I.      Bill of Costs (ECF No. 139)**

Plaintiff seeks costs in the amount of $11,661.24. Pl.'s Bill of Costs, ECF No. 139. Defendant timely objected and argues the Court should deny Plaintiff's request or, in the alternative, reduce the amount. Def.'s Resp. 2, ECF No. 142. For the reasons that follow, the Court grants Plaintiff's Bill of Costs.

Federal Rule of Civil Procedure 54(d)(1) provides: "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "Rule 54(d) creates a presumption for awarding costs to prevailing parties; the losing party must show why costs should not be awarded." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 944–45 (9th Cir. 2003) (citations omitted).

Title 28 of the United States Code allows a federal court to tax specific items as costs against a losing party pursuant to Rule 54(d)(1). *See* 28 U.S.C. § 1920. Section 1920 provides:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation for court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

*Id.* A court must limit an award of costs to those defined in 28 U.S.C. § 1920 unless otherwise provided for by statute. *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 579–80 (9th Cir. 2010).

Although Rule 54 creates a presumption in favor of awarding costs to the prevailing party, the Rule also "vests in the district court discretion to refuse to award costs" in appropriate circumstances. *Ass'n of Mex.-Am. Educators v. California*, 231 F.3d 572, 591 (9th Cir. 2000) (citation omitted). This discretion is not unlimited and a district court must specify reasons for its refusal to award costs. *Id.* "Appropriate reasons for denying costs include: (1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247–48 (9th Cir. 2014) (citation omitted). "This is not an exhaustive list of good reasons for declining to award costs, but rather a starting point for analysis." *Id.* at 1248 (citation and quotations omitted).

After reviewing the parties' submissions and relevant authority, the Court concludes there is no reason for denying or reducing Plaintiff's request. As such, Plaintiff's request is granted and Plaintiff is awarded costs in the amount of $11,661.24.

## II.     Judgment as a Matter of Law (ECF No. 140)

Defendant argues: (1) Defendant is entitled to judgment as a matter of law on Plaintiff's breach of contract claim; (2) Plaintiff's economic damages are too speculative and remote to justify recovery; and (3) Defendant is entitled to judgment as a matter of law on Plaintiff's claim for noneconomic damages arising out of breach of contract. Def.'s Mot. JMOL 1–11, ECF No. 140 ("Def.'s Mot."). For the reasons that follow, Defendant's motion is denied.

Under Rule 50(a) of the Federal Rules of Civil Procedure, a court may grant a motion for judgment as a matter of law if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue[.]" Fed. R. Civ. P. 50(a). "If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b).

"A renewed motion for judgment as a matter of law is properly granted only 'if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict.'" *Castro v. County of L.A.*, 833 F.3d 1060, 1066 (9th Cir. 2016) (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)). "A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Pavao*, 307 F.3d at 918; *see also Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 842 (9th Cir. 2014) ("In considering a Rule 50(b)(3) motion for judgment as a matter of law, the district court must uphold the jury's award if there was any 'legally sufficient basis' to support it.") (quoting *Costa v. Desert Palace Inc.*, 299 F.3d 838, 859 (9th Cir. 2002)).

In evaluating a motion for judgment as a matter of law, a court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) (quoting *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006)). A court may not make credibility determinations, weigh the evidence, or "substitute its view of the evidence for that of the jury." *Krechman v. City of Riverside*, 723 F.3d 1104, 1110 (9th Cir. 2013) (citations and

quotations omitted). Because a motion under Rule 50(b) is a renewed motion, "a party cannot properly 'raise arguments in its post-trial motion for judgment as a matter of law that it did not first raise in its Rule 50(a) pre-verdict motion.'" *Go Daddy Software, Inc.*, 581 F.3d at 961 (quoting *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003)).

### A.    **Breach of Contract**

In asserting it is entitled to judgment as a matter of law on Plaintiff's breach of contract claim, Defendant argues: (1) SWOCC's Discrimination and Harassment Policy ("SWOCC Policy") is an "unenforceable contract;" and (2) the jury did not have a legally sufficient evidentiary basis to find that Defendant breached the parties' contract because the jury returned "legally contradictory" verdicts. Def.'s Mot. 2–6, ECF No. 140. The Court addresses each argument in turn.

#### 1.    Existence of a Contract

The Court previously determined that the SWOCC Policy established terms of the parties' contract. *See* O&O 16, ECF No. 65; *Gililland*, 2021 WL 5760848, at *8. Defendant now argues "Plaintiff's breach of contract claim against SWOCC fails as a matter of law" because "[t]here can be no existing contract without consideration." Def.'s Mot. 3, ECF No. 140.[3] Defendant claims the SWOCC Policy is a "mere recital[ ] of what is already required by law" and argues that "pre-existing legal duties unsupported by consideration . . . cannot constitute an independent basis of recovery in contract." *Id.* at 3–4 (citing *Nine v. Starr*, 8 Or. 49, 50–51 (Or. 1879)).

---

[3] In raising the argument about consideration for the first time in its Rule 50 motions, Defendant essentially asks the Court to alter or amend its prior ruling. However, Defendant did not file a motion to alter or amend a judgment under Rule 59(e). *See* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment *must* be filed no later than 28 days after the entry of the judgment.") (emphasis added); *see also* Fed. R. Civ. P. 6(b)(2) ("A court may not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b)."). As such, this Court does not evaluate Defendant's argument under Rule 59(e). *Cf. Carter v. United States*, 973 F.2d 1479, 1488 (9th Cir. 1992) (noting that "the district court has no discretion to consider a late rule 59(e) motion").

Page 6 — OPINION AND ORDER

"To state a claim for breach of contract, plaintiff must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach[,] and defendant's breach resulting in damage to plaintiff." *Moyer v. Columbia State Bank*, 316 Or. App. 393, 402–03, 505 P.3d 26, 34 (Or. Ct. App. 2021) (citing *Slover v. Or. State Bd. of Clinical Soc. Workers*, 144 Or. App. 565, 570, 927 P.2d 1098, 1101 (Or. Ct. App. 1996)) (alteration in original). "Whether a contract existed is a question of law." *Key West Retaining Sys., Inc. v. Holm II, Inc.*, 185 Or. App. 182, 188, 59 P.3d 1280, 1283 (Or. Ct. App. 2002), *rev. den.*, 335 Or. 402, 68 P.3d 231 (Or. 2003). "A contract is most commonly formed by an offer, an acceptance of that offer, and an exchange of consideration." *Moro v. State*, 357 Or. 167, 196, 351 P.3d 1, 20 (Or. 2015) (citations omitted).

"Consideration is defined as 'some right, interest, profit or benefit or some forbearance, [detriment], loss or responsibility given, suffered or undertaken by the other.'" *Homestyle Direct, LLC v. Dep't of Hum. Servs.*, 354 Or. 253, 262, 311 P.3d 487, 492–93 (Or. 2013) (en banc) (citation omitted); *see also Moro*, 351 P.3d at 20 n.18 ("'Consideration' is that which one party provides to the other in exchange for entering into the contract."). Under the pre-existing duty rule, "doing what one is already bound to do is not a consideration sufficient to support a contract." *Sw. Or. Public Def. Servs., Inc. v. Dep't of Revenue*, 312 Or. 82, 93, 817 P.2d 1292, 1298 (Or. 1991) (citation and quotations omitted).

In Oregon, the relationship between a student and a college, "which involves the payment of tuition for educational services, is essentially contractual in nature." *Vejo v. Portland Pub. Sch.*, 204 F. Supp. 3d 1149, 1175 (D. Or. 2016), *rev'd in part on other grounds*, 737 Fed. App'x 309 (9th Cir. 2018) (citations omitted); *see also, e.g.*, *Doe v. Or. State Univ.*, --- F. Supp. 3d ----, 2022 WL 2713886, at *9 (D. Or. 2022) ("The Oregon Supreme Court has previously held that

payment of tuition may form a contract between a student and a university.") (citing *Tate v. N. Pac. Coll.*, 70 Or. 160, 165, 140 P. 743, 745 (Or. 1914)); *Bird v. Lewis & Clark Coll.*, 104 F. Supp. 2d 1271, 1276 (D. Or. 2000) (noting that "[t]he basic legal relation between a student and private university or [c]ollege is contractual in nature") (citation omitted). In *Tate*, the Oregon Supreme Court reasoned that the relationship between a college and a student is contractual in nature:

> The [college] issued its catalogue, stating its requirements for graduation and for the conferring upon candidates of [a] degree [ ], and the plaintiff, with knowledge of those requirements, entered the college, matriculated, and attended its sessions, with the intention of obtaining said degree. These acts on the part of the college and of the plaintiff constituted a contract.

*Tate*, 140 P. at 745. Statements in course catalogs, student handbooks, and similar documents can establish the terms of a contractual agreement. *See, e.g.*, *Bird*, 104 F. Supp. 2d at 1276 (noting that "[t]he catalogs, bulletins, circulars, and regulations of the institution made available to the matriculant became a part of the contract") (citation omitted). A plaintiff "must point to an identifiable contractual promise that the defendant failed to honor." *Gibson v. Walden Univ., LLC*, 66 F. Supp. 3d 1322, 1324 (D. Or. 2014) (citation omitted).

As mentioned, the Court found that the SWOCC Policy established the terms of the parties' contract. O&O 16, ECF No. 65; *Gililland*, 2021 WL 5760848, at *8. Defendant now argues "Plaintiff's breach of contract claim against SWOCC fails as a matter of law" because "[t]here can be no existing contract without consideration." Def.'s Mot. 3, ECF No. 140.[4] However, whether a contract existed is a question of law. *Key West*, 59 P.3d at 1283. Defendant can appeal the Court's denial of its summary judgment motion. *Cf. Banuelos v. Constr. Laborers*

---

[4] As mentioned, Defendant did not make this argument about consideration in its motion for summary judgment. *See* Defs.' Mot. Summ. J. 25–26, ECF No. 36.

*Tr. Funds for S. Cal.*, 382 F.3d 897, 902 (9th Cir. 2004) ("If a district court denies a motion for summary judgment on the basis of a question of law that would have negated the need for a trial, this court should review that decision.").[5]

    2.    <u>Legally Sufficient Evidentiary Basis</u>

Defendant argues "the evidentiary record and the jury's conclusions" show that Defendant did not breach its contract with Plaintiff because: (1) the jury could not have found that Defendant breached the parties' contract without also finding that Defendant violated Title IX; and (2) because the jury decided Defendant did not violate Title IX, the jury's verdict on the breach of contract claim was "a contradictory and impermissible verdict that must be corrected with the dismissal of Plaintiff's breach of contract claim." Def.'s Mot. 4–6, ECF No. 140. In response, Plaintiff argues: (1) the jury had a legally sufficient evidentiary basis to find Defendant breached the parties' contract; (2) there is no inconsistency between the jury's verdicts; and (3) even if there were an inconsistency, it is not a basis for the Court to enter judgment in Defendant's favor. Pl.'s Resp. 9–14, ECF No. 151.

In relevant parts, the SWOCC Policy reads as follows:

> All complaints about behavior that may violate this policy shall be promptly investigated. Any student or employee who has knowledge of conduct in violation of this policy or feels he or she is a victim of harassment or discrimination must immediately report his or her concerns to the appropriate management authority. It is the intent of the Board that appropriate corrective action will be taken by the College to stop any form of discrimination or harassment that may occur, prevent its recurrence, and address negative consequences.
> . . .
> <u>Non-Retaliation Statement</u>

---

[5] "[A]n order denying summary judgment is generally not reviewable after trial." *In re Bard IVC Filters Prod. Liab. Litig.*, 969 F.3d 1067, 1072 (9th Cir. 2020) (citing *Ortiz v. Jordan*, 562 U.S. 180, 188 (2011)). However, the Supreme Court declined to consider whether an exception to that general rule exists for "purely legal" issues. *Ortiz*, 562 U.S. at 190. "Because *Ortiz* allowed for the possibility of a *Banuelos*-like exception, it is not clearly irreconcilable with *Banuelos*." *In re Bard*, 969 F.3d at 1073. As such, *Banuelos* remains applicable here.

Page 9 — OPINION AND ORDER

> The initiation of a complaint in good faith about behavior that may violate this policy shall not adversely affect the educational assignments or student environment of a student complainant[.] . . . There shall be no retaliation by the College against any person who, in good faith, reports, files a complaint, or otherwise participates in an investigation or inquiry of discrimination or harassment.
> . . .
> <u>Complaint Procedure</u>
> . . .
> Any individual may initiate a discrimination or harassment complaint by contacting the [Vice President of Administrative Services]. The allegations will be examined for application of this policy. If the allegations do not implicate discrimination or harassment, the College will notify the individual of any other applicable College policy or procedure for addressing the concerns. A record will be kept of the complaint or incident for the time period required by law.

Pl.'s Ex. 106 ("SWOCC Policy") 1–2.[6] The SWOCC Policy also contained specific procedural steps for both informal complaints and formal complaints. *Id.* at 2–4.

Here, the jury had a legally sufficient evidentiary basis to find that Defendant breached its contract with Plaintiff.[7] For example, Plaintiff testified that after she asked her instructor Melissa Sperry why she had given Plaintiff failing marks on her assignments, Sperry told Plaintiff that "it takes a classy woman to be a nurse, and unclassy women shouldn't be nurses." Tr. 89:25–90:13, ECF No. 149. Plaintiff then spoke to Tim Dailey, the Vice President of Student Services and Title IX Investigator at SWOCC,[8] about the "targeted harassment" she faced from her instructor, Tr. 98:23–100:3, ECF No. 149, and about her past in the adult film industry, Tr. 924:24–925:1, ECF No. 144. Plaintiff asked Dailey to treat her complaint in a formal capacity.

---

[6] Bates Nos. SWOCC-00554–SWOCC-00557.

[7] The Court here and throughout this opinion includes only some of the evidence presented during the party's eight-day trial that supports the jury's verdict.

[8] *See* Tr. 895:22–896:24, ECF No. 144.

Tr. 143:1–144:6, ECF No. 149. Plaintiff also testified that she filled out a "Discrimination and Harassment Form and Policy" and submitted it to Dailey's secretary. 148:11–23, ECF No. 149.

Despite Dailey assuring Plaintiff that he was working on her complaint, *see* Tr. 919:1–4, 919:12–19, ECF No. 144, Dailey did not formally interview Plaintiff or her instructors, *see* Tr. 918:3–920:21, ECF No. 144. After Plaintiff was placed on academic probation, Dailey drafted a letter recommending Plaintiff "be removed from a probationary status and returned to good standing with the nursing program" and that "points be restored to the assignments in question." Tr. 941:15–19, ECF No. 144. However, Dailey never shared the letter or its contents with Plaintiff or formally sent the letter to SWOCC administrators. Tr. 942:20–22, ECF No. 144. Plaintiff repeatedly asked Dailey for updates about his investigation, *see, e.g.*, Tr. 948:19, ECF No. 144, but Plaintiff ultimately failed her classes and was no longer a viable candidate in the nursing program, Tr. 167:22–168:1, 168:19–21, ECF No. 150. Dailey testified that SWOCC did not conduct a Title IX investigation. Tr. 967:10, ECF No. 144. Viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, the jury had a legally sufficient evidentiary basis to find Defendant breached its contract with Plaintiff. As such, even if it is also possible to draw a contrary conclusion, the jury's verdict must be upheld. *See Pavao*, 307 F.3d at 918.

Additionally, the Court is unpersuaded by Defendant's suggestion that Plaintiff's breach of contract claim flowed entirely from Plaintiff's Title IX claim. Defendant argues that, because the jury determined Defendant did not violate Title IX, "it necessarily follows that Plaintiff's breach of contract claim must fail." Def.'s Mot. 5, ECF No. 140. Defendant further argues:

> [T]he heart of the discrimination and harassment policy was to respond to discrimination and harassment on the basis of a protected class. Indeed, SWOCC's failure to undertake such a task would defeat the object of the parties entering into that contract.

Page 11 — OPINION AND ORDER

> But the evidence shows—and the jury agrees—SWOCC did not fail in that undertaking. The jury unanimously concluded that SWOCC did not discriminate against Plaintiff by selectively enforcing university standards, by being deliberately indifferent to harassment against Plaintiff, or by retaliating against Plaintiff. The evidentiary record and the jury's conclusions demonstrate that SWOCC did not materially breach the discrimination and harassment policy. Plaintiff's breach of contract claim should be dismissed as a matter of law.

*Id.* The problem with Defendant's argument is that an ultimate finding by a jury after an eight-day trial cannot excuse Defendant's failure to investigate Plaintiff's complaint while she was a student at SWOCC. The SWOCC Policy contained specific steps that Defendant promised it would take in response to a student's good faith complaint—steps that are not explicitly prescribed by Title IX. In other words, the SWOCC Policy contained contractual promises broader than Defendant's existing legal obligations under Title IX. As such, the fact that the jury ultimately determined Defendant did not violate Title IX does not mean Defendant adequately investigated Plaintiff's complaint pursuant to the steps outlined in the SWOCC Policy.

Lastly, assuming *arguendo* the jury's verdicts were inconsistent, the verdicts would still stand. "Unless one legal conclusion is the prerequisite for another, inconsistencies between [general verdicts] must stand." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1034 (9th Cir. 2005); *see also Williams v. Gaye*, 895 F.3d 1106, 1132 (9th Cir. 2018) ("[T]here is no duty to reconcile inconsistent general verdicts.").[9] As explained, a Title IX violation was not a prerequisite for Plaintiff's breach of contract claim. As such, even if the verdicts were inconsistent, there would be no basis for this Court to disturb them.

---

[9] Neither party made arguments about the nature of the verdicts. *See* Def.'s Mot. 2–6, ECF No. 140; Pl.'s Resp. 9–14, ECF No. 151; Def.'s Reply 1–3, ECF No. 154. The Federal Rules of Civil Procedure contemplate three types of verdicts: special verdicts under Rule 49(a), general verdicts with interrogatories under Rule 49(b), and common law general verdicts without interrogatories. *Zhang*, 339 F.3d at 1031. "Although some general verdicts are more general than others, . . . the key is not the number of questions on the verdict form, but whether the jury announces the ultimate legal result of each claim." *Id.* Here, the jury returned general verdicts on both the Title IX claim and breach of contract claim. *See* Jury Verdict, ECF No. 134.

B.       **Economic Damages**

Defendant argues Plaintiff's economic damages are too speculative and remote to justify recovery. Def.'s Mot. 6–7, ECF No. 140. Focusing on Dr. Peter Philips' report and testimony, Defendant argues that "[t]he economic loss sum reached by Dr. Philips and presumably relied upon by the jury amounts to an accumulation of improper speculation and remote assumptions completely untethered from and untraceable to any contract breach by SWOCC." *Id.* at 6. In response, Plaintiff argues the jury had a legally sufficient evidentiary basis to award Plaintiff economic damages. Pl.'s Resp. 15–17, ECF No. 151.

First, the jury had a legally sufficient evidentiary basis to award Plaintiff economic damages for her breach of contract claim. Dr. Philips testified that $735,417 represented Plaintiff's economic losses with respect to her claims. Tr. 811:14–17, ECF No. 162. Defendant did not present any expert testimony on the issue of economic damages. Viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, the jury had a legally sufficient evidentiary basis to award Plaintiff $735,417 in economic damages. As such, even if it is also possible to draw a contrary conclusion, the jury's verdict must be upheld. *See Pavao*, 307 F.3d at 918.

Additionally, Defendant has waived its objections to Dr. Philips' report and testimony. Defendant previously filed a *Daubert* motion to exclude Dr. Philips' expert report and testimony, *see* Def.'s Mot. Exclude 9–10, ECF No. 110, but later withdrew that motion as to Dr. Philips, *see* Op. and Order 6, ECF No. 119; Def.'s Reply 1–2, ECF No. 118.[10] Defendant did not reassert its

---

[10] "In light of the court's ruling at the pre-trial conference on May 17, 2022 permitting evidence going to non-economic damages as a potential remedy for the alleged breach of contract claim, and having conducted expert discovery regarding economist Peter Philips, PhD, Defendant withdraws its motion to exclude . . . the proposed Economic Harm Experienced by Nicole Gililland from her Termination from the Nursing Program ('economic report') and the testimony of its author, Peter Philips, PhD." Def.'s Reply 1–2, ECF No. 118.

Page 13 — OPINION AND ORDER

objections during the trial. "[W]hen a non-propounding party is aware of purported deficiencies in an expert's report or proposed testimony, that party must raise its objections before, or at the latest during, the expert's testimony. Otherwise, the non-propounding party risks a finding of waiver of the objection to that expert's testimony or waiver of the argument that the testimony is necessarily insufficient to support a verdict." *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 442 F. Supp. 3d 1329, 1344 (D. Or. 2020). Here, by not raising objections before or during Dr. Philips' testimony, Defendant waived its argument that Dr. Philips' report and testimony were insufficient to support the jury's award.

    C.    **Noneconomic Damages**

Defendant argues that it is entitled to judgment as a matter of law on Plaintiff's noneconomic damages arising out of breach of contract because: (1) Plaintiff did not present evidence that Defendant acted wantonly or recklessly; (2) Defendant did not breach the discrimination and harassment policy;[11] (3) Plaintiff did not present evidence that Defendant's breach of the SWOCC Policy caused her bodily harm; and (4) Plaintiff impermissibly advanced a tortious breach of contract claim in seeking noneconomic damages for breach of contract. Def.'s Mot. 8–11, ECF No. 140. The Court addresses each argument in turn.

Under Oregon law, "[t]he generally accepted rule is that contract damages will not be awarded for mental suffering only, not attendant to or followed by an injury to the plaintiff." *Keltner v. Washington Cty.*, 310 Or. 499, 504, 800 P.2d 752, 754 (Or. 1990). To recover noneconomic damages for a breach of contract claim, a plaintiff must show: (1) the breach was wanton or reckless; (2) the breach caused bodily harm; and (3) "it was the wanton or reckless

---

[11] Defendant argues only that, "[f]or the reasons described [above], SWOCC did not materially breach any discrimination and harassment policy with Plaintiff." Def.'s Mot. 10, ECF No. 140. The Court has already determined that the jury had a legally sufficient evidentiary basis to find that Defendant breached the parties' contract.

Page 14 — OPINION AND ORDER

breach of a contract to render a performance of such a character that the defendant had reason to know when the contract was made that the breach would cause mental suffering [f]or reasons other than mere pecuniary loss." *Farris v. U.S. Fidelity and Guaranty Co.*, 284 Or. 453, 456, 587 P.2d 1015, 1017 (Or. 1978) (quoting Restatement (First) of Contracts § 341 (1932)).[12]

    1.    <u>Wanton or Reckless Breach</u>

Defendant first argues that Plaintiff did not present evidence showing Defendant acted wantonly or recklessly. Def.'s Mot. 9–10, ECF No. 140. Plaintiff argues that she presented a legally sufficient evidentiary basis for the jury to find Defendant's breach was wanton or reckless. Pl.'s Resp. 18–20, ECF No. 151.

Although the Oregon courts have left "wanton or reckless" undefined in the context of noneconomic damages for breach of contract, the Oregon Supreme Court in *Farris* adopted the noneconomic damages standard from the First Restatement of Contracts. *See Farris*, 587 P.2d at 1017 (quoting Restatement (First) of Contracts § 341 (1932)).[13] The First Restatement "denies recovery of damages for mental suffering, unless the breach was wanton or reckless; mere conscious neglect to perform such a contractual duty is not enough." Restatement (First) of Contracts § 341, cmt. a (1932).

Here, the jury had a legally sufficient evidentiary basis to conclude that Defendant's acts were wanton or reckless and that those acts rose above mere conscious neglect to perform a

---

[12] The jury was instructed that "non-economic damages are available for Plaintiff's breach of contract claim if Plaintiff proves: (1) the breach was wanton or reckless; (2) the breach caused bodily harm; and (3) the defendant had reason to know when the contract was made that the breach of the contract would cause mental suffering for reasons other than mere pecuniary loss." Jury Instructions 15, ECF No. 132.

[13] The Court notes neither party proposed a jury instruction defining "wanton or reckless." *See, e.g.*, Joint Proposed Jury Instructions, ECF No. 78; Def.'s Proposed Jury Instructions, ECF No. 79; Pl.'s Proposed Jury Instructions, ECF No. 83; Pl.'s Supplemental Proposed Jury Instructions, ECF No. 109; Def.'s Proposed Jury Instructions, ECF No. 115; Pl.'s Amended Proposed Jury Instructions, ECF No. 117; Pl.'s Corrected Proposed Jury Instructions, ECF No. 121.

contractual duty. For example, Plaintiff testified at trial that she reached out to Tim Dailey, the Vice President of Student Services and Title IX Investigator at SWOCC,[14] and told him about her past as an adult film actress and how her instructor called her an "unclassy woman." Tr. 142:4–15, ECF No. 149; Tr. 924:24–925:1, ECF No. 144. Dailey testified that Plaintiff was sad, anxious, and upset when she stopped by his office. Tr. 922:2–7, ECF No. 144. Francisco Saldivar, the Dean of Career, Technical, and Workforce Education,[15] admitted that it was "not unusual" for students who have an issue in a highly competitive program like SWOCC's nursing program to "feel highly emotional" and "devastated." Tr. 520:4–12, ECF No. 160. Despite Dailey assuring Plaintiff that he and Saldivar were working on her complaint, *see* Tr. 919:1–4, ECF No. 144, Dailey never formally interviewed Plaintiff or her instructors, *see* Tr. 918:3–920:21, ECF No. 144. Plaintiff repeatedly asked Dailey for updates about his investigation, *see, e.g.*, Tr. 948:19, ECF No. 144, but Plaintiff ultimately failed her classes and was no longer a viable candidate in the nursing program, Tr. 167:22–168:1, 168:19–21, ECF No. 150. Dailey testified that SWOCC did not conduct a Title IX investigation. Tr. 967:10, ECF No. 144.

Defendant stresses that SWOCC employees "responded to [Plaintiff's] concerns" and "help[ed] advance her success in the SWOCC nursing program." Def.'s Mot. 9, ECF No. 140. However, viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, the jury had a legally sufficient evidentiary basis to find that Defendant acted wantonly or recklessly. As such, even if it is also possible to draw a contrary conclusion, the jury's verdict must be upheld. *See Pavao*, 307 F.3d at 918.

   2.   <u>Bodily Harm</u>

---

[14] *See* Tr. 895:22–896:24, ECF No. 144.

[15] *See* Tr. 511:1–3, ECF No. 160.

Defendant next argues that: (1) Plaintiff did not present evidence that Defendant's breach of the SWOCC Policy caused her bodily harm; and (2) "Plaintiff did not introduce any evidence that SWOCC and Plaintiff contemplated Plaintiff's physical injuries generally, or suicide specifically, as an outcome of SWOCC breaching portions of the discrimination and harassment policy." Def.'s Mot. 10, ECF No. 140. Plaintiff responds that she presented sufficient evidence for the jury to find in her favor on both *Farris* elements. Pl.'s Resp. 21–22, ECF No. 151.

Here, the jury had a legally sufficient evidentiary basis to conclude that Defendant's breach caused Plaintiff bodily harm. For example, and as mentioned, Dailey testified that Plaintiff was sad, anxious, and upset when she stopped by his office. Tr. 922:2–7, ECF No. 144. Plaintiff testified that when she realized "[n]othing [was] being done[,]" she attempted suicide. Tr. 155:11–158:6, ECF No. 160. After her attempt, Plaintiff spent a weekend at a hospital and testified she was "not okay physically." Tr. 157:21–23, ECF No. 160. Plaintiff's expert, Dr. Louise Fitzgerald, connected Defendant's acts to Plaintiff's psychological state. Tr. 733:19–24, 735:21–738:14, ECF No. 161. Defendant did not present any expert testimony on the issue. Viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, the jury had a legally sufficient evidentiary basis to find that Defendant's breach caused Plaintiff bodily harm. As such, even if it is also possible to draw a contrary conclusion, the jury's verdict must be upheld. *See Pavao*, 307 F.3d at 918.

Defendant also argues that "Plaintiff did nothing to show that reasonable people in the position of Plaintiff and SWOCC, respectively, would have foreseen Plaintiff's attempted suicide as a probable result of a breach of some portion of [the SWOCC Policy]—particularly a breach that does not result in discrimination or harassment." Def.'s Mot. 10, ECF No. 140.[16] However,

---

[16] As explained, the Court finds unconvincing Defendant's post-hoc attempt to use the jury's Title IX verdict after trial to excuse Defendant's failure to investigate Plaintiff's complaints while Plaintiff was a student at SWOCC.

Page 17 — OPINION AND ORDER

the jury here had a legally sufficient evidentiary basis to conclude that Defendant had reason to know when the contract was made that its breach would cause Plaintiff mental suffering for reasons other than mere pecuniary loss. A jury could reasonably determine that a college, in issuing a harassment and discrimination policy to its students, contemplates that a student may be so distressed in the face of the college's failure to investigate the student's harassment or discrimination complaint that the student may attempt suicide. As such, even if it is also possible to draw a contrary conclusion, the jury's verdict must be upheld. *See Pavao*, 307 F.3d at 918.

        3.        Tortious Breach of Contract

Lastly, Defendant argues that "[w]hen noneconomic damages became available to Plaintiff on her breach of contract claim, it transformed into an impermissible claim for tortious breach of contract." Def.'s Mot. 11, ECF No. 140. Defendant cites no authority in support of this proposition. In fact, Defendant's argument directly contradicts Oregon Supreme Court precedent—which Defendant cites in support of its other arguments—that noneconomic damages *are* available to a plaintiff on a breach of contract claim when that breach causes bodily harm. *See Keltner*, 800 P.2d at 754; *see also Farris*, 587 P.2d at 1017. As explained above, the jury had a legally sufficient evidentiary basis to award Plaintiff noneconomic damages on her breach of contract claim. Defendant's motion is denied.

**III.**    **Stay (ECF No. 141)**

Defendant moves for: (1) a stay of enforcement of judgment pending any appeals; (2) a waiver of any bond requirement; and (3) if no waiver is granted, an extension of thirty days to obtain a supersedeas bond to secure a stay. Def.'s Mot. Stay 1–2, ECF No. 141.

Under Rule 62(b), "a party may obtain a stay by providing a bond or other security." Fed. R. Civ. P. 62(b); *see also Nken v. Holder*, 556 U.S. 418, 421 (2009) (noting that a federal court,

"as part of its traditional equipment for the administration of justice," may stay the execution of a judgment pending appeal) (citation omitted). "The posting of a bond protects the prevailing plaintiff from the risk of a later uncollectible judgment and compensates him for delay in the entry of final judgment." *N.L.R.B. v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988).

"District courts have inherent discretionary authority in setting supersedeas bonds[.]" *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1505 n.1 (9th Cir. 1987) (citation omitted). A court also has "broad discretionary power to waive the bond requirement if it sees fit." *Cotton ex. rel. McClure v. City of Eureka, Cal.*, 860 F. Supp. 2d 999, 1027 (N.D. Cal. 2012) (citing *Townsend v. Holman Consulting Corp.*, 881 F.2d 788, 796–97 (9th Cir. 1989)). Courts have looked to the following factors in determining whether to waive the bond requirement:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so [p]lain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

*Cotton*, 860 F. Supp. 2d at 1028 (quoting *Dillon v. City of Chicago*, 866 F.2d 902, 904–05 (7th Cir. 1988)).

Here, Defendant has submitted a SWOCC Board Resolution stating that, "[i]f there remains a monetary judgment after the College has exhausted any and all appeal rights, the College will promptly satisfy the judgment and anticipates having sufficient funds to do so." Def.'s Sur-Reply, Ex. 1, ECF No. 164. The Court finds that the *Dillon* factors weigh in favor of Defendant. As such, the Court waives the bond requirement and stays this case pending resolution of any appeals.

**ORDER**

For the reasons explained above, Plaintiff's Bill of Costs (ECF No. 139) is GRANTED; Defendant's Renewed Motion for Judgment as a Matter of Law (ECF No. 140) is DENIED; and Defendant's Motion for a Stay (ECF No. 141) is GRANTED.

DATED this 19th day of December 2022.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge